*NOT FOR PUBLICATION                                                                              ECF NO. 21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| JOSEPH MCKINNEY, | : CIV. NO. 22-1859 (RMB/SAK) |
| Plaintiff, | : **OPINION** |
| v. | : |
| JOHN POWELL, et al., | : |
| Defendants | : |

**APPEARANCES:**

AMOS GERN
STARR GERN DAVISON & RUBIN, P.C.
105 EISENHOWER PARKWAY, SUITE 401
ROSELAND, NJ 07068-1640
      On behalf of Plaintiff

MICHAEL EZRA VOMACKA
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
DIVISION OF LAW, SPEC SECTION
25 MARKET ST.
P.O. BOX 112
TRENTON, NJ 08625
      On behalf of Defendants

**RENÉE MARIE BUMB**, Chief United States District Judge

      This matter comes before the Court upon Defendants' [partial] motion to

dismiss the complaint (Mot. to Dismiss, Docket No. 21, and Defs' Brief in Supp. of

Mot. to Dismiss ("Defs' Brief") Docket No. 21-2), Plaintiff's response in opposition

1

to Defendants' motion to dismiss ("Pl's Opp. Brief" Docket No. 23); Defendants' reply brief (Defs' Reply Brief, Docket No. 24.)  The Court will decide the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion to dismiss.

I.  THE COMPLAINT

Plaintiff filed this lawsuit on April 1, 2022.  (Docket No. 1.)   He alleges that he was incarcerated at South Woods State Prison ("SWSP") on April 6, 2020, when Defendant Correction Officer Van Kline ("Van Kline") used racial slurs against him, and Defendant Sergeant Carty ("Carty") laughed and encouraged Van Kline to continue.  Plaintiff believes Van Kline, who was African American, was taunting him with racial slurs to impress four Caucasian corrections officers who were with him, including Carty.  On April 7, 2020, Van Kline refused to let Plaintiff and his cellmate out for recreation time.  Van Kline said that had a problem with Plaintiff.  Later that evening, Plaintiff saw his name on the "Pass List" for a medical appointment, but when he reported to the medical department, he learned he did not have an appointment.  While Plaintiff was returning to his cell, Van Kline verbally confronted him and then swung at Plaintiff, missing his head and hitting his chest with a closed fist.  Van Kline hit the duress button while he continued to hit Plaintiff.  The defendant correction officers ("Officer Defendants") responded immediately and sprayed mace in Plaintiff's face and beat him.  While calling Plaintiff racial slurs, they continued to beat him after he was laying on the floor.  The Officer Defendants

2

did not handcuff Plaintiff before taking him to the medical department. Plaintiff was sent to Inspira Hospital. He had suffered a left orbital floor fracture and other facial wounds, bruises and injuries requiring stitches.

Plaintiff was interviewed by the Special Investigations Unit "SID" on at least two occasions. He was punished for the incident where the Officer Defendants beat him. On April 19, 2020, Plaintiff was transferred to Northern State Prison. In Count One of the complaint, Plaintiff alleges violation of the Fourth, Fourteenth, and Eighth Amendments by the Officer Defendants use of excessive force, and their failure to intervene in the use of excessive force by the other officers.

The Court infers from Plaintiff's allegation that he was incarcerated at SWSP, a state prison (Compl., ¶ 30), that he is a convicted and sentenced state prisoner. Therefore, Plaintiff's allegations of excessive force and failure to intervene arise under the Eighth Amendment, not the Fourth and Fourteenth Amendments.[1] The Court will dismiss the excessive force and failure to intervene claims under the

---

[1] "[A] pretrial detainee claiming a substantive due process violation based on excessive force 'must show ... only that the officers' use of that force was objectively unreasonable' and not 'that the officers were subjectively aware that their use of force was unreasonable.'" *Kedra v. Schroeter*, 876 F.3d 424, 438 (3d Cir. 2017) (quoting *Kingsley v. Hendrickson*, [576] U.S. [389], 135 S. Ct. 2466, 2470, 2475 (2015)). In contrast, a convicted and sentenced state prisoner alleging excessive force by a state actor under § 1983 must allege facts establishing "force was applied . . . maliciously and sadistically to cause harm." *Drumgo v. Little*, 711 F. App'x 73, 76 (3d Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). If a plaintiff has failed to allege the elements of excessive force, his failure to intervene claim also fails. *Id.* Failure to intervene in the use of excessive force claims brought by convicted state prisoners against corrections officers are governed by the Eighth Amendment. *See e.g., Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002).

Fourth and Fourteenth Amendments against Defendants John Powell ("Powell"), Administrator of SWSP, and Al Solanik ("Solanik"), Associate Administrator of SWSP (collectively "the Policymaker Defendants") without prejudice.[2]

Plaintiff's allegations and legal claims against Defendants John Powell ("Powell"), Administrator of SWSP, and Al Solanik ("Solanik"), Associate Administrator of SWSP (collectively, the "Policymaker Defendants") are contained primarily in paragraphs 69-107 of the complaint. Plaintiff alleges that, as administrators of SWSP, the Policymaker Defendants,

> act[ed] under color of law and within the scope of [their] employment, who [were] responsible for operations as well as the custody and care of inmates housed at SWSP; the development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at SWSP and the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by SWSP, in particular having the duty to ensure that policies relating to the use of force were enacted, implemented and/or enforced.

(Compl., ¶¶ 2-3.)

In support of the claims against the Policymaker Defendants, Plaintiff alleges they were aware of "a history of the use of excessive force in DOC facilities both before and after the incident pled in this Complaint." (*Id.*, ¶ 72.) Relevant here,[3]

---

[2] Dismissal is without prejudice because amendment of the Fourteenth Amendment excessive force and failure to protect claims is not futile if Plaintiff can allege he was not a convicted and sentenced state prisoner at the time of the alleged constitutional violations.

[3] Plaintiff alleged numerous instances of prison complaints about the excessive use of force against them by corrections officers in New Jersey State Prisons other than

Plaintiff alleges eleven lawsuits and/or notice of claims were filed against corrections officers for excessive use of force against an inmate at SWSP. (Compl., ¶¶ 72i,[4] o, p, q,[5] r, t, u, v,[6] w, y, z.)

Plaintiff alleges the Policymaker Defendants knew of this history of excessive force by corrections officers against inmates but "refused to remediate these problems[,]" knowing that failing to do so was substantially certain to lead to severe harm to the inmates under their custody and control. (*Id.*, ¶ 76.) Plaintiff alleges the Policymaker Defendants became aware of this history in several ways, by attending statewide conferences, notification of complaints that were filed, through media publications, through the chain of command at SWSP, and by reviewing Internal Affairs files and complaints. (*Id.*) Plaintiff alleges the Policymaker Defendants "had a duty and obligation to investigate these allegations, commence internal affairs

---

SWSP. It is not plausible that the Policymaker Defendants had authority to take any action on allegations of excessive force by inmates at prisons where the Policymaker Defendants held no supervisory position. Therefore, the Court will not consider these allegations in determining whether Plaintiff alleged sufficient facts to establish liability of the Policymaker Defendants for excessive use of force and failure to intervene.

[4] There are two paragraphs numbered "72i" in the complaint.

[5] In Paragraph 72q of the complaint, Plaintiff alleges there was an investigation by SIS, leading to indictment of the corrections officer at SWSP who was accused of using excessive force against an inmate on February 14, 2017.

[6] Sergeant Carty and Lieutenant Sheppard, both defendants in this action, were accused of physically assaulting an inmate at SWSP on June 20, 2018. (Compl., ¶ 72v.) Plaintiff does not allege the outcome of the notice of claim filed by the inmate in this matter.

("SID") investigations, and thereafter provide adequate training, supervision and discipline to the involved corrections officers in order to correct this misconduct, which they failed to do." (Compl., ¶ 77.)  Among other things, Plaintiff alleges:

> [the] failure to mediate the known use of excessive force and history of brutality throughout the DOC system, and in partic[ular] SWSP, including the failure to discipline and conduct proper Internal Affairs reviews for those officers demonstrating misconduct in the use of force as aforesaid, shows deliberate indifference to the likelihood of substantial harm to inmates at the SWSP, including Plaintiff….

(Compl., ¶ 82.)

In Counts Three through Eight of the Complaint, Plaintiff alleges the same conduct by the defendants violates of the New Jersey Civil Rights Act (hereafter "NJCRA") (Count III against all Defendants); negligence (Count IV against all Defendants); intentional infliction of emotional distress (Count V against Officer Defendants); assault and battery (Count VI against Officer Defendants); and common law conspiracy (Count VII against all Defendants.) (Compl., ¶¶ 133-175.) On January 17, 2023, Defendants filed a partial motion to dismiss. (Defs' Brief in Supp. of Mot. to Dismiss, Docket No. 21-2.)

## II. DISCUSSION

### A. Motion to Dismiss Rule 12(b)(6)

District courts addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim, "must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading

6

of the complaint, the plaintiff may be entitled to relief.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). In determining whether a plaintiff has failed to state a claim, district courts should disregard allegations that are no more than legal conclusions. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Palakovic v. Wetzel*, 854 F.3d 209, 219–20 (3d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted in *Palakovic*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir. 2010). Plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### B.     The Parties' Arguments

Defendants seek dismissal of all constitutional and state law claims against them in their official capacities based on Eleventh Amendment immunity and because they are not "persons" subject to liability under § 1983 and the NJCRA. (Defs' Brief, Docket No. 21-2 at 7-8, 22-23.) Plaintiff consents to dismissal of all official capacity claims only against Defendants. (Pl's Opp. Brief, Docket No. 23 at 45.) The claims against all Defendants in their official capacities will be dismissed with prejudice based on sovereign immunity under the Eleventh Amendment. *See e.g., Ramirez v. City of*

*Trenton*, Civil Action No. 21-cv-10283 (FLW), 2022 WL 1284737 (D.N.J. Apr. 29, 2022).

Defendants seek dismissal of all § 1983 and NJCRA claims against the Policymaker Defendants in their individual capacities for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Defs' Brief, Docket No. 21-2 at 16-20.) Defendants assert that Plaintiff's attempt to show other inmates in the DOC have alleged prior instances of excessive force fails to show the Policymaker Defendants knew or should have known of the violent propensities of the Officer Defendants alleged to have perpetrated this particular assault on Plaintiff. (*Id.* at 19.) Even if Plaintiff alleged the Policymaker Defendants were aware of other instances of excessive force, Plaintiff has not alleged the Policymakers' subjective recognition that Plaintiff might be assaulted by the Officer Defendants. (*Id.*) Additionally, Defendants contend that Plaintiff has not identified a deficient policy, how any policy was constitutionally deficient, how any deficiencies in policies caused him harm or that the Policymaker Defendants had subjective knowledge of a known deficiency in any policy. (*Id.* at 19-20.)

Defendants seek dismissal of Plaintiff's common law negligence claims against the Policymaker Defendants because Plaintiff has not pled facts indicating they are liable for negligent hiring or supervision and because they may not be held liable for intentional wrongdoing of their subordinates. (*Id.* at 20-21.) Defendants seek dismissal of Plaintiff's civil conspiracy claims against all defendants with prejudice for failure to state a claim. (*Id.* at 22). Plaintiff consents to dismissal of the civil conspiracy claims against the Policymaker Defendants without prejudice. (Pl's Opp. Brief,

Docket No. 23 at 44.)  This Court will, however, dismiss Plaintiff's civil conspiracy claims against the Policymaker Defendants without prejudice.[7]  Finally, Defendants seek dismissal of Plaintiff's tort claims against them in their official capacities because they are immune.  (Defs' Brief, Docket No. 21-2 at 23.)

Plaintiff opposes dismissal of his constitutional claims under § 1983 and the NJCRA against the Policymaker Defendants.  (Pl's Opp. Brief, Docket No. 23 at 32-39.)  Plaintiff alleged in the complaint that the Policymaker Defendants were directly on notice of a custom of excessive force at SWSP by their knowledge of thirteen lawsuits or claims of excessive force by other inmates at SWSP, including a prior lawsuit or claim against Defendant Carty and Sheppard.  (*Id.* at 37.)  Plaintiff alleged the Policymaker Defendants failed to discipline or terminate officers at SWSP who used excessive force.  (*Id.*)  Therefore, the Policymaker Defendants were on notice that their failure to discipline corrections officers for use of excessive force and failure to intervene in the use of excessive force shows their deliberate indifference to the risk that Plaintiff would be the victim of excessive force, and their failure to remediate the use of excessive force at SWSP was the moving force behind the use of excessive force against Plaintiff on April 7, 2020.

---

[7] "[A] district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

Plaintiff also opposes dismissal of his common law negligence claims against the Policymaker Defendants. (Pl's Opp. Brief, Docket No. 23 at 39-43.) Plaintiff asserts that he properly alleged the elements of common law negligence: (1) the Policymaker Defendants had a duty to protect Plaintiff's safety; (2) the Policymaker Defendants had knowledge of prior incidents of excessive force against inmates at SWSP, including by Defendants Carty and Sheppard; (3) the Policymaker Defendants failed to supervise or discipline the Correction Officer Defendants; (4) this resulted in the Officer Defendants' excessive use of force against Plaintiff; and (5) Plaintiff suffered permanent injuries as a result of the use of excessive force. (Pl's Opp. Brief, Docket No. 23 at 42-43.)

Plaintiff further opposes dismissal of the civil conspiracy claims against the Officer Defendants. (*Id.* at 43-45.) Plaintiff submits that the complaint contains sufficient allegations that, after an encounter between Plaintiff, Van Kline and others on April 6, 2020, the Officer Defendants conspired to use excessive force against Plaintiff by creating a false medical appointment in order to lure Plaintiff to an area where he would be alone with Defendant Van Kline, who would physically attack him and press the duress button to call the other officers to join in the physical attack.

In Defendants' reply brief, they assert Plaintiff's allegations of the existence of prior incidents of excessive force and failure to intervene at SWSP and other prisons are insufficient to state a claim against the Policymaker Defendants. (Defs' Reply Brief, Docket No. 24 at 3.) Defendants argue Plaintiff has failed to allege any facts that the Policymaker Defendants were on notice of the prior incidents of excessive

force at SWSP or how such knowledge would put them on notice of the risk to Plaintiff's safety. (*Id.*) Defendants suggest that, at a minimum, Plaintiff was required to plead facts sufficient to demonstrate: (1) the method by which the Policymakers learned of the alleged prior incidents of excessive force; (2) when they learned of these prior incidents; (3) after receiving such notice, the specific policies or practices the Policymaker Defendants should have implemented to prevent future abuses at SWSP; and how their failure to implement such policies or practices caused Plaintiff's injury. (*Id.* at 3-4.)

Defendants further replied that Plaintiff failed to allege sufficient facts in support of a common law negligence claim against the Policymaker Defendants. (*Id.* at 4.) Defendants assert Plaintiff's negligence claim fails because he did not allege the Policymaker Defendants negligently hired the Officer Defendants or had reason to know they were unfit to be hired, nor did Plaintiff allege the Policymaker Defendants had a duty to train the Officer Defendants, how any training was lacking, or how any training deficiency caused Plaintiff's injury. (*Id.* at 4-6.) Finally, Defendants submit that Plaintiff alleged only one prior incident of excessive force by two of the Officer Defendants, and this is insufficient to put the Policymaker Defendants on notice that the Officer Defendants may harm Plaintiff or other inmates if not properly supervised. (*Id.* at 6-8.) Defendants submit that without knowing whether any of the prior lawsuits or claims of excessive force against SWSP corrections officers were resolved in the Plaintiff's favor, Plaintiff may not conclude that the Policymaker Defendants could reasonably have foreseen that the Officer Defendants would harm him. (Id.)

11

Defendants also submit that Plaintiff did not allege sufficient facts to establish the Policymaker Defendants were on notice of prior allegations of excessive force by corrections officers at SWSP. (*Id.* at 9.) Therefore, Defendants conclude Plaintiff failed to allege a common law claim of negligent supervision.

### C. Liability of supervisors under 42 U.S.C. § 1983 and the NJCRA

As a threshold matter, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff "must establish that [he] was deprived of a federal constitutional or statutory right by a state actor." *Stephens v. Kenney*, 802 F. App'x 715, 719 (3d Cir. 2020) (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)).[8] Under § 1983, supervisors "are liable only for their own unconstitutional actions." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *cert. granted*, *judgment rev'd sub nom. on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Barkes*, 766 F.3d at 319. Supervisors may be liable if, with the requisite level of intent for the constitutional violation alleged, they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration

---

[8] The New Jersey Civil Rights Act was modeled after 42 U.S.C. § 1983; thus, the courts in New Jersey have consistently considered claims under the NJCRA "through the lens of § 1983"). *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011).

in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Supervisors may also be liable "if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted).

### 1. Policymaker claims under § 1983 and the NJCRA

Here, the parties do not dispute whether Plaintiff properly pled an Eighth Amendment excessive force claim against the Officer Defendants.[9] This Court will assume the complaint properly alleges such a claim and will determine whether Plaintiff alleged sufficient facts to establish the Policymaker Defendants' personal involvement in the alleged use of excessive force. To establish liability of the Policymaker Defendants, Plaintiff relies on their maintenance of a custom of corrections officers using excessive force on inmates, allegedly caused by the Policymaker Defendants' failure to properly investigate and discipline correction

---

[9] When determining whether excessive force was used against a prisoner in violation of the Eighth Amendment, courts must consider factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." *Drumgo*, 711 F. App'x at 76 (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

13

officers for such behavior.[10] Plaintiff alleges only one substantiated claim of excessive force by a corrections officer against an inmate at SWSP, and Plaintiff alleges this claim was investigated and the officer was indicted. (Compl., ¶ 72q.) This allegation does not support a claim against the Policymaker Defendants for creating a custom of excessive force against inmates by failing to properly investigate and discipline correction officers.

Plaintiff further relies on mere allegations of the prior use of excessive force by corrections officers against inmates at SWSP. The fact that other inmates brought claims alleging they were victims of the excessive use of force by corrections officers at SWSP does not permit this Court to reasonably infer that the claims were true and that the Policymaker Defendants failed to investigate such claims or take disciplinary action against the corrections officers. Plaintiff must plead more facts about these prior incidents to state a plausible claim that the Policymaker Defendants are liable for maintaining a custom of failing to investigate and discipline officers for claims of excessive use of force. Defendants seek dismissal of these claims with prejudice. This Court will dismiss the claims without prejudice because discovery may reveal these prior allegations were substantiated, and that the Policymaker Defendants failed to properly investigate the officers involved. Such facts could give rise to an inference that the Policymaker Defendants were liable for the excessive use of force in violation of the Eighth Amendment under § 1983 and the NJCRA.

---

[10] Plaintiff has not identified any specific deficiency in the training provided to the Officer Defendants as a basis for liability of the Policymaker Defendants.

### 2. New Jersey state law negligence claims against the Policymaker Defendants

In New Jersey, claims of negligent hiring, supervision or training are not forms of vicarious liability. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (citations omitted). The elements of a negligent hiring claim include:

> (1) that the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) "that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." *Di Cosala v. Kay*, 91 N.J. 159, 173, 450 A.2d 508 (1982).

*Id.* at 916. Plaintiff has not alleged the Policymaker Defendants knew of the dangerous attributes of the Officer Defendants and hired them despite the fact that they posed a risk of harm to inmates. Plaintiff's state law negligent hiring claim will be dismissed without prejudice.

The elements of a claim for negligent supervision or training under New Jersey state law include "that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." *Id.* Plaintiff alleges the Policymaker Defendants' failure to investigate or discipline other correctional officers for previous instances of alleged use of excessive force against inmates created a risk of harm that the Defendants would use excessive force against Plaintiff, and Defendants knew or had reason to know of this risk. As with the § 1983 and NJCRA claims, Plaintiff's failure to allege these prior allegations of excessive use of force by

inmates at SWSP were substantiated precludes a reasonable inference that the Policymaker Defendants alleged failure to investigate and discipline officers for excessive use of force created the risk that the Officer Defendants would use excessive force against Plaintiff in the future.  This claim will also be dismissed without prejudice.

      **3.**      **New Jersey state law civil conspiracy claim against the Officer Defendants**

"In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" *G.D. v. Kenny*, 411 N.J. Super. 176, 197, 984 A.2d 921, 934 (App. Div. 2009), *aff'd,* 205 N.J. 275, 15 A.3d 300 (2011) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177, 876 A.2d 253 (2005) (quoting *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364, 633 A.2d 985 (App. Div.1993), *certif. denied*, 135 N.J. 468, 640 A.2d 850 (1994)).  If factual allegations in a complaint raise a right to relief above a speculative level, a claim may proceed beyond a motion to dismiss "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  In this light, Plaintiff has adequately pled civil conspiracy by alleging that the Officer Defendants, in their individual capacities, agreed to falsify Plaintiff's medical appointment to lure him out of his cell to a location where Van Kline could beat him without surveillance, and

press the duress button to signal the other Officer Defendants to join Van Kline in beating Plaintiff.  Plaintiff further alleges the beating was racially motivated.  Although discovery may not bear these facts out, Plaintiff's allegations survive at this juncture.

### III.   CONCLUSION

In summary, the Court will dismiss:  (1) Plaintiff's § 1983, NJCRA and New Jersey state tort law claims for money damages against Defendants in their official capacities with prejudice; (2) Plaintiff's excessive force claims against the Policymaker Defendants under § 1983 the NJCRA without prejudice; (3) Plaintiff's New Jersey common law claims of negligent hiring, supervision and training against the Policymaker Defendants in their individual capacities without prejudice for failure to state a claim; and (4) the Court will deny Defendants' motion to dismiss the common law civil conspiracy claim against the Officer Defendants in their individual capacities.

An appropriate Order follows.

**Date:  August 30, 2023**

                                                  <u>s/Renée Marie Bumb</u>
                                                  **RENÉE MARIE BUMB**
                                                  **Chief United States District Judge**